# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| G. THOMAS THORNTON, et al, | : | |
| Plaintiffs, | : | Case No. 2:09-CV-585 |
| v. | : | Judge Holschuh |
| IGNAZIO "NICK" CANGIALOSI, | : | Magistrate Judge Abel |
| Defendant. | : | |
| | : | |

## MEMORANDUM OPINION & ORDER

Plaintiffs G. Thomas Thornton and Betty Thornton, minority shareholders in Taylor Building Products, Inc., filed suit against Ignazio "Nick" Cangialosi, the majority shareholder, alleging breach of a Stock Redemption Agreement, breach of fiduciary duty, and fraudulent inducement. The Court's jurisdiction is based on diversity of citizenship. This matter is currently before the Court on Defendant's motion to dismiss Plaintiffs' fraudulent inducement claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, that motion is granted.

## I.  Background and Procedural History

Plaintiffs Tom and Betty Thornton owned Premium Glass Company, Inc. On August 18, 2005, they agreed to exchange 100% of their ownership interest in Premium Glass for a 10% ownership interest in Taylor Building Products, Inc. ("Taylor"), a corporation wholly owned by Defendant Nick Cangialosi. At the same time, Tom Thornton entered into an employment agreement with Taylor. In connection with the Stock Exchange Agreement ("SEA"), the parties executed a Stock Redemption Agreement ("SRA"). The SRA provided that Cangialosi would purchase the Thorntons' stock in Taylor within 120 days of certain triggering events, one of which

was the termination of Tom Thornton's employment. (Ex. to Mot. to Dismiss). In the SEA, Cangialosi represented and warranted that:

> Taylor and Cangialosi have the financial ability to consummate all of the transactions contemplated by this Agreement. As of the Closing Date, including the giving effect to the transactions contemplated herein, they will be solvent and will have total assets having a total fair market value in excess of the amount necessary to pay their debts as they become due.

SEA at ¶ 4.2(J). The representations and warranties contained in the SEA were to "survive the execution and delivery of all documents and the Closing related to the consummation of this Agreement; provided that, such survival shall be for a period of one (1) year after the Closing." SEA at ¶ 4.3.

Early in November of 2007, Tom Thornton was terminated, thereby triggering the SRA. Pursuant to the terms of the SRA, Cangialosi had 120 days to purchase and pay for Thorntons' shares of Taylor stock. SRA at ¶ 3(b). When Cangialosi failed to do so within the time allotted, the Thorntons filed suit against him. Count 1 of the Amended Complaint alleges a breach of the SRA. Count 2 alleges that Cangialosi breached his fiduciary duty as a majority shareholder. Count 3 alleges that Cangialosi fraudulently induced Plaintiffs to enter into the SEA. Count 4 alleges that Cangialosi acted with actual malice, accompanied by a wanton and willful disregard of Plaintiffs' rights, justifying an award of punitive damages. Cangialosi has moved to dismiss the claim of fraudulent inducement pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]

---

[1] Cangialosi incorrectly identifies the fraudulent inducement claim as Count 4 of the Amended Complaint. It is actually Count 3.

## II.	Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint may be dismissed if it fails to state a claim upon which relief can be granted.  Because a motion under Rule 12(b)(6) is directed solely to the complaint itself, Roth Steel Prods. v. Sharon Steel Corp., 705 F.2d 134, 155 (6th Cir. 1983), the focus is on whether the plaintiff is entitled to offer evidence to support the claims, rather than on whether the plaintiff will ultimately prevail.  Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 184 (2005) (citing Scheuer v. Rhodes, 4l6 U.S. 232, 236 (1974)).  The purpose of a motion to dismiss under Rule 12(b)(6) "is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true."  Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993).  If there is an absence of law to support the type of claim made, or if the facts alleged are insufficient to state a valid claim, or if on the face of the complaint there is an insurmountable bar to relief, dismissal of the action is proper.  Little v. UNUMProvident Corp., 196 F. Supp.2d 659, 662 (S.D. Ohio 2002) (citing Rauch v. Day & Night Mfg. Corp., 576 F.2d 697 (6th Cir. 1978)).

When considering a motion to dismiss pursuant to Rule 12(b)(6), the court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true.  See Scheuer, 4l6 U.S. at 236; Arrow v. Federal Reserve Bank of St. Louis, 358 F.3d 392, 393 (6th Cir. 2004); Mayer, 988 F.2d at 638.  The court will indulge all reasonable inferences that might be drawn from the pleading.  See Saglioccolo v. Eagle Ins. Co., 112 F.3d 226, 228 (6th Cir. 1997).  However, it will not accept conclusions of law or unwarranted inferences cast in the form of factual allegations.  See Gregory v. Shelby County, 220 F.3d 433, 446 (6th Cir. 2000); Lewis, 135 F.3d at 405.

**III.    Analysis**

Count 3 of Plaintiffs' Amended Complaint alleges that Cangialosi promised verbally and in writing that if Tom Thornton was ever terminated from his position at Taylor, Cangialosi would purchase Plaintiffs' stock within 120 days. According to the Amended Complaint, Cangialosi made this promise to induce Plaintiffs to enter into the SEA so that he could obtain control of Plaintiffs' company, Premium Glass. Plaintiffs further allege that this promise was fraudulent because Cangialosi had no intention of keeping it at the time it was made. In addition, Plaintiffs allege that Cangialosi made material false statements concerning his personal net worth in order to induce them to enter into the SEA. Plaintiffs allege that they justifiably relied on Cangialosi's promise to honor the terms of the SRA and his statements regarding his personal net worth, and suffered damages as a result. (Amd. Compl. ¶¶ 30-38).

Cangialosi has moved to dismiss Plaintiffs' claim of fraudulent inducement for failure to state a claim upon which relief can be granted. He argues that under Ohio law, a party asserting a breach of contract claim cannot recover under a concurrent tort theory unless the defendant owes the plaintiff a duty independent of that created by the contract, and the plaintiff suffers damages separate and distinct from the injury resulting from the breach of contract.[2] Cangialosi argues that Plaintiffs cannot satisfy either requirement. He also argues that because representations and warranties contained in the SEA survived for only one year after Closing, Plaintiffs' claim of

---

[2] Although the SEA and SRA contain choice-of-law provisions stating that the agreements and the transactions contemplated therein are to be governed by the laws of the State of New Jersey, see SEA at ¶ 8.6 and SRA at ¶ 9, both parties rely on Ohio law. The Court presumes that this is because the fraudulent inducement claim is a tort claim rather than a contract claim and, as a federal court exercising diversity jurisdiction, the Court is bound to apply the law of the forum state. See Travelers Prop. Cas. Co. of Am. v. Hillerich & Bradsby Co., Inc., 598 F.3d 257, 264 (6th Cir. 2010).

4

fraudulent inducement is time-barred.

### A. Independent Duty

Under Ohio law, "the existence of a contract action generally excludes the opportunity to present the same case as a tort claim." Wolfe v. Continental Cas. Co., 647 F.2d 705, 710 (6th Cir. 1981). Ohio courts have held that "[a] tort claim based upon the same actions as those upon which a claim of contract breach is based will exist independently of the contract action only if the breaching party also breaches a duty owed separately from that created by the contract, that is, a duty owed even if no contract existed." Textron Fin. Corp. v. Nationwide Mut. Ins. Co., 115 Ohio App.3d 137, 151, 684 N.E.2d 1261, 1270 (Ohio Ct. App. 1996) (citing Battista v. Lebanon Trotting Ass'n, 538 F.2d 111, 117 (6th Cir. 1976)). If the tort claim is factually intertwined with the breach of contract claim such that the two cannot be separated, recovery cannot be had for both. See id. at 153, 684 N.E.2d at 1272. Cangialosi argues that Plaintiffs' claim of fraudulent inducement must be dismissed because it arises out of the same facts that give rise to the breach of contract claim and because he owed Plaintiffs no duty independent of his contractual duties under the SEA and SRA.

In their response brief, Plaintiffs skirt around this issue. Instead, they first argue that they have sufficiently pled a claim of fraudulent inducement. To succeed on such a claim, Plaintiffs must show that "the defendant made a knowing, material misrepresentation with the intent of inducing the plaintiff's reliance, and that the plaintiff relied upon that misrepresentation to her detriment." ABM Farms, Inc. v. Woods, 81 Ohio St.3d 498, 502, 692 N.E.2d 574, 578 (Ohio 1998). As a general rule, a fraud claim "cannot be predicated upon promises or representations relating to future actions or conduct." Tibbs v. National Homes Constr. Corp., 52 Ohio App.2d 281, 286, 369 N.E.2d 1218, 1222 (Ohio Ct. App. 1977). However, an exception exists "where an individual makes a

promise concerning a future action, occurrence, or conduct and, at the time he makes it, has no intention of keeping the promise." Williams v. Edwards, 129 Ohio App.3d 116, 124, 717 N.E.2d 368, 374 (Ohio Ct. App. 1998).

Here, Plaintiffs have alleged that Cangialosi made two representations: (1) if certain triggering events took place, he would buy back Plaintiffs' shares of stock in Taylor; and (2) he had sufficient net worth to consummate the agreement. Plaintiffs allege that these were knowing, material misrepresentations made with the intent of inducing Plaintiffs' reliance, and that Plaintiffs relied on these misrepresentations to their detriment. Plaintiffs also allege that at the time the promises were made, Cangialosi had no intention of keeping them. Plaintiffs therefore argue that this case falls within the exception set forth in Williams and that their allegations are sufficient to state a claim of fraudulent inducement.

This, however, is not the relevant question. The question is whether such a claim is viable in light of the concurrent breach of contract claim. As noted above, an independent tort claim is viable only if Plaintiffs can show that Cangialosi owed a duty separate and distinct from his contractual duties. As the Supreme Court of Ohio noted in ABM Farms, a claim of fraudulent inducement typically involves "a misrepresentation of facts *outside the contract* or other wrongful conduct [inducing] a party to enter into the contract. Examples include a party to a release misrepresenting the economic value of the released claim, or one party employing coercion or duress to cause the other party to sign an agreement." 81 Ohio St.3d at 503, 692 N.E.2d at 578 (emphasis added). In other words, the claim involves some *collateral* misrepresentation designed to induce the plaintiff to enter into the contract. See also Wall v. Planet Ford, Inc., 159 Ohio App.3d 840, 850-51, 825 N.E.2d 686, 694 (Ohio Ct. App. 2005) (giving an example of a termite inspector falsely

6

representing that a house is infested with termites in order to induce the homeowner to enter into a pest control contract).

In contrast, in the present case, Plaintiffs have not alleged that Cangialosi made any misrepresentations *collateral* to the contract. They allege that Cangialosi promised to buy back their stock and represented that he was financially solvent. These same representations form the basis for Plaintiffs' breach of contract claim. In the SRA, Cangialosi promised that he would buy back the stock if Tom Thornton's employment was terminated. Cangialosi also specifically warranted – for a period of one year – that he had sufficient assets to consummate the agreements.

Under these circumstances, Plaintiffs' allegation that Cangialosi had no intention of keeping the promises at the time he made them is not enough to save the fraudulent inducement claim. As the appellate court noted in Telxon Corporation v. Smart Media of Delaware, Inc., 9th Dist. Nos. 22098, 22099, 2005-Ohio-4931, at ¶ 33 n.10, the exception set forth in Edwards "does not apply . . . where the alleged unfulfilled promise is not a collateral statement designed to induce contract formation, but rather, the promise upon which the purported breach of contract is premised." In Telxon, the court concluded that "because the premise underlying [the] tort claims was the alleged failure to fulfill a contractual promise, and not any material misstatement of fact, we find these claims insupportable as a matter of law." Id. at ¶ 38. See also Eggert Agency, Inc. v. NA Mgmt. Corp., No. C2-07-1011, 2008 WL 3474148, at *7 (S.D. Ohio Aug. 12, 2008) (distinguishing Telxon, and holding that Edwards exception did apply where *collateral* promises were made to induce plaintiffs to enter into stock purchase agreement).

The case of Infocision Management Corporation v. Foundation for Moral Law, Inc., No. 5:08CV1342, 2009 WL 2244166 (N.D. Ohio July 27, 2009), cited by Cangialosi, is also instructive.

In that case, the Foundation for Moral Law ("FML"), a charitable organization, entered into a telemarketing contract with Infocision Management Company whereby Infocision would solicit donations on behalf of FML. If the cost of Infocision's services exceeded the amount of donations collected, a "breakeven agreement" provided that Infocision would either pay the difference or be allowed to "make up to two recalls per donor acquired during the next rolling 18 month period to make up the deficit." FML, wanting to avoid "donor burnout," understood this language to mean that no individual donor would be recalled more than two times.

Infocision, however, called numerous donors more than twice. When challenged by FML, Infocision explained that it interpreted this language to mean that the total number of recalls could not exceed more than twice the total number of donors acquired. FML filed suit against Infocision, alleging breach of contract. FML also brought a claim of fraudulent inducement, alleging that Infocision had intentionally misrepresented its interpretation of the recall provision in order to fraudulently induce FML to enter into the agreement. Infocision moved for partial summary judgment on the fraudulent inducement claim, arguing that this allegation was insufficient to convert the breach of contract claim into a tort claim. The court agreed and held that even though the allegations in the complaint were sufficient to state a claim of fraudulent inducement, that claim merged with the breach of contract claim because there was no evidence that Infocision breached a duty independent of the contract. The court held that Infocision's "failure to perform pursuant to FML's interpretation of the recall provision gave rise to both claims. Therefore, FML cannot bring both." Id. at *5.

Likewise, in this case, even though Plaintiffs may have sufficiently alleged a claim of fraudulent inducement, that claim cannot be brought concurrent with the breach of contract claim.

8

The representations that allegedly induced Plaintiffs to enter into the SEA and the SRA are the same allegedly unfulfilled promises that give rise to the breach of contract claim. Because the two claims are factually intertwined and cannot be separated, the Court dismisses the claim of fraudulent inducement.[3]

### B.  Separate Damages/Statute of Limitations

Cangialosi also argues that dismissal of the fraudulent inducement claim is warranted because Plaintiffs cannot establish damages stemming from the alleged fraud that are "separate and distinct" from damages arising from the alleged breach of contract. See Medical Billing, Inc. v. Medical Mgmt. Sciences, Inc., 212 F.3d 332, 338 (6th Cir. 2000) (applying Ohio law). In addition, Cangialosi argues that Plaintiffs' fraudulent inducement claim is time-barred since the SEA warranted his financial solvency for a period of only one year beyond Closing. SEA, § 4.3.

Having determined that Plaintiffs' claim of fraudulent inducement must be dismissed because they have failed to allege the breach of any duty independent of those created by the contract, the Court need not address these additional issues.

---

[3] In support of their argument that the representations made by Cangialosi to induce them to enter into the contract are separate and distinct from the promises giving rise to the breach of contract, Plaintiffs also cite to Djubasak v. Taylor, 128 N.E.2d 849 (Ohio Ct. App. 1955) and CBS Personnel Serv., LLC v. Canadian Am. Transp., Inc., 290 F. Supp.2d 879 (S.D. Ohio 2003). These cases are factually distinguishable in that they dealt with representations that were collateral to the contract. Moreover, they do not address the question of whether a fraudulent inducement claim can be brought concurrent with a breach of contract claim absent a showing that defendant owed a duty independent of the contractual duty. The relevant issue in these cases was whether extrinsic evidence could be admitted to support a claim of fraudulent inducement even though the contracts contained a merger clause.

**IV.    Conclusion**

For the reasons set forth above, the Court **GRANTS** Defendant's motion to dismiss Plaintiffs' claim of fraudulent inducement.  (Doc. 6).

**IT IS SO ORDERED.**


Date: May 26, 2010                                              **/s/ John D. Holschuh**
                                                                John D. Holschuh, Judge
                                                                United States District Court